UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Kathleen Marez, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Cause No. 4:09-cv-00999-MLM |
| | ) |
| | ) |
| Saint-Gobain Containers, Inc., | ) |
| | ) |
|     Defendant. | ) |

**DEFENDANT SAINT-GOBAIN CONTAINERS, INC.'S BRIEF IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND REQUEST FOR A WRITTEN OPINION**

Pursuant to Federal Rule of Civil Procedure 50(b), Defendant, Saint-Gobain Containers, Inc. ("Saint-Gobain"), by counsel, respectfully submits this Brief in Support of Renewed Motion for Judgment as a Matter of Law ("Renewed Motion") and requests a written opinion on all related issues[1]:

**INTRODUCTION**

Plaintiff presented no evidence to support a jury verdict that her alleged FMLA leave notification was the "but for" cause of her termination. In fact, the sole evidence before the jury was that other causes, considered by decision-makers who undisputedly had no knowledge of her alleged leave notification, were the reason for her termination. Because there was no legally sufficient evidentiary basis for a verdict in Plaintiff's favor on the FMLA claim, the Court should enter judgment as a matter of law against Plaintiff and in favor of Saint-Gobain on this claim.

---

[1] Please note that a trial transcript has been ordered by Saint-Gobain but not yet received as of the date of filing. As such, all references to the trial record are approximate, based on recollection only, and are not intended to mischaracterize or misstate the contents of the record.

1

I.      **Procedural Background**

Before trial, Saint-Gobain filed for summary judgment on all of Plaintiff's claims. [Document Nos. 53 and 54]. The claims that were not dismissed at that stage – namely Plaintiff's gender discrimination and FMLA retaliation claims – proceeded to trial in January 2011.

At the close of Plaintiff's presentation of her case, Saint-Gobain orally made its initial Motion for Judgment as a Matter of Law ("Motion") under Federal Rule of Civil Procedure 50(a). Saint-Gobain subsequently supported its Motion in the midst of putting on its own case by filing a written motion and brief in support thereof [Document No. 112]. Finally, Saint-Gobain renewed its Motion orally at the close of all the evidence. Although the Court denied each of Saint-Gobain's Rule 50(a) Motions, it did so without a written opinion explaining its reasoning.

On February 7, 2011, Saint-Gobain filed a Supplemental Submission in Opposition to an Award of Liquidated Damages ("Submission"). On February 8, 2011, the Court entered judgment in favor of Saint-Gobain on Plaintiff's gender discrimination claim and against Saint-Gobain on Plaintiff's FMLA retaliation claim in the amount of $206,500 with an additional $206,500 in liquidated damages. Again, the Court did not issue a written opinion explaining its reasoning.

II.     **Standard Applicable to Federal Rule of Civil Procedure 50 Motions**[2]

Under Federal Rule of Civil Procedure 50(a)(1):

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

---

[2] A brief summary of the factual background and a summary of Plaintiff's claims at trial can be found in Saint-Gobain's written Motion and Brief in Support of Judgment as a Matter of Law and its Submission. Both are incorporated herein by reference. [Document Nos. 112 and 124].

2

> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

A renewed motion may be made after the matter has been submitted to the jury under Rule 50(b). Fed. R. Civ. Pro. 50(b).[3]

Judgment as a matter of law under Rule 50 is appropriate when reasonable persons could not differ as to the conclusions to be drawn from the evidence. *TEC Floor Corp. v. Wal-Mart Stores, Inc.*, 4 F.3d 599, 601 (8th Cir. 1993) (discussing judgment as a matter of law following a jury verdict). Further, "when the record contains no proof beyond speculation to support the verdict, then judgment as a matter of law is appropriate." *Liberty Mut. Fire Ins. Co. v. Scott,* 486 F.3d 418, 422 (8th Cir. 2007); Fed. R. Civ. P. 50(a)(1).

### III.   Summary of the Basis for Saint-Gobain's Rule 50 Motions

Plaintiff gave the jury no legally sufficient evidentiary basis upon which to find for her on the FMLA claim. In fact, the record "contains no proof beyond speculation to support the verdict." *Id.* Even if the Plaintiff was entitled to the disputed fact – whether she did or did not notify Sandy Cook of her intention to take leave – being construed in her favor,[4] Plaintiff presented <u>no evidence</u> upon which a reasonable jury could find that that notification was the "but for" reason for the Plaintiff's termination. Evidence put forth by both parties actually weighs against such a conclusion.

Moreover, it appears from the jury instructions and the procedure in this case that the Court improperly allowed the jury to determine the issue of liquidated damages, warranting reconsideration and judgment in Saint Gobain's favor on this issue.

---

[3] Such a motion may be a prerequisite for review of the sufficiency of the evidence by a court of appeals. *EEOC v. Southwestern Bell Tel., L.P.*, 550 F.3d 704, 709 (8th Cir. 2008).
[4] *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 984 (8th Cir. 2008).

## **LEGAL ARGUMENT**

At trial, Plaintiff had the burden of proving each and every element of her FMLA retaliation claim such that a reasonable jury could find in her favor on that claim. She failed to present any evidence that her alleged FMLA notification was the "but for" cause of her termination. In fact, both parties presented evidence to the contrary. In the absence of evidence to support this required element, the FMLA claim should not have been submitted to the jury and Saint-Gobain is entitled to judgment as a matter of law in its favor on that claim.

**I.  Plaintiff did not present evidence to support her FMLA retaliation claim.**

    **a.  Legal Standard.**

At trial, Plaintiff had the burden of proving both (a) that she did request leave and (b) that the request was a determining factor, or the "but for" cause, in the decision. *Higgins v. Gonzales,* 481 F.3d 578, 589 (8th Cir. 2007), *Krohn v. Forsting,* 11 F. Supp. 2d 1082, 1089, 1093 (E.D. Mo. 1998). By law, her evidence of both elements was required to go "beyond speculation." *Liberty Mut. Fire Ins. Co.,* 486 F.3d at 422. Plaintiff did not meet her burden.

    **b.  Plaintiff failed to present evidence sufficient for a jury to find the required causal connection.**

Plaintiff's sole evidence of the first element (that she requested leave) is that she told Sandy Cook, <u>and only Sandy Cook</u>, that she needed to take leave in January of 2008. Sandy Cook denies that this ever occurred. However, even if the jury decided this fact dispute in Plaintiff's favor, Plaintiff's alleged statement to Sandy Cook that she needed to take leave in January 2008, does not establish the required causal connection between Plaintiff's alleged request for leave and her termination.

### i.  The majority of the decision-makers did not know about the request.

To establish the causal connection required for her FMLA retaliation claim, Plaintiff had to present evidence that the decision-makers knew, at the time the termination decision was made, that she had made a request for FMLA leave in 2008. *See Simon v. Simmons Foods, Inc.*, 49 F.3d 386, 389 (8th Cir. 1995).  If Sandy Cook was the sole and final decision-maker with respect to Plaintiff's termination, then there might have been some basis for the jury verdict.  However, Ms. Cook was <u>not</u> the sole decision-maker, and the others have testified they were unaware of the request for leave.

Even if Plaintiff did actually tell Sandy Cook that she needed to take leave in 2008 and Sandy Cook heard the request, Plaintiff presented no evidence (and by her own admission does not know) whether Sandy Cook ever told anyone else about the alleged request for leave.  <u>All of the members of upper management who were involved in the termination decision – Lisa Steiner, Scott Meade, and Charlie Franzoi – testified that they did not know that Plaintiff had requested leave in 2008 at the time of the termination.</u>  Plaintiff admitted she did not complete any paperwork or take any of the formal steps Saint-Gobain requires for an individual to request FMLA leave.  There is not a shred of evidence to support a finding that anyone at Saint-Gobain other than Sandy Cook knew about the alleged request for leave at the time of the termination.

Scott Meade, Lisa Steiner and Charlie Franzoi each testified that they were involved in the termination decision and independently reviewed the facts and agreed that termination was warranted based on Plaintiff's conduct.  The sole evidence presented shows: (1) Lisa Steiner and Scott Meade were both present at her termination meeting, (2) Scott Meade and Sandy Cook's names were both on the termination letter; and (3) Scott Meade was the primary person who spoke to her during the termination meeting.  In addition, the quality manager, Julia Evans,

5

noticed some of Plaintiff's violations and documented them in her exceptions report. Plaintiff presented no evidence to support the required jury finding that any decision-maker other than Sandy Cook knew or could have known about Plaintiff's alleged request for future FMLA leave.

Thus, a reasonable jury faced with the evidence, could conclude only that the independent decisions made by each of the decision-makers other than Sandy Cook to terminate Plaintiff <u>could not have been motivated or caused by her alleged leave request because they did not have knowledge of the request</u>. *See Wolff v. Berkley Inc.*, 938 F.2d 100, 103 (8th Cir. 1991) and *Gilreath v. Butler Manufacturing Co.*, 750 F.2d 701, 703 (8th Cir. 1984) (supporting the general proposition that a plaintiff must show that the decision-maker had actual knowledge that a particular employee engaged in protected activity in order to support a finding of causal connection in a retaliation case.) Thus, Plaintiff's evidence, even when taken in the light most favorable to her, failed, as a matter of law, to establish the required causal connection between her alleged request for leave and her termination.

### ii. Plaintiff's "theories" of causal connection have no basis in law or fact.

Plaintiff's FMLA claim was fatally flawed because of the evidence conclusively demonstrating that (1) no one other than Sandy Cook knew about the alleged leave request and (2) three other individuals independently determined that termination was warranted based on Plaintiff's conduct. She attempted to resurrect her claim with argument and theories (not evidence) of causation. Her attempts fail legally and factually.

Plaintiff theorized (primarily in her closing argument) that Sandy Cook, after allegedly being notified of Plaintiff's intent to take FMLA leave "hurried to gather paperwork" that would support the termination, arguably because she was looking for a reason to terminate Plaintiff. However, the evidence shows Julia Evans, who Plaintiff does not claim had any knowledge

6

regarding the FMLA leave request, identified some of the problems that occurred on Plaintiff's shift and brought them to the decision-makers' attention by way of her exceptions report. Similarly, Lisa Steiner, Charlie Franzoi and Scott Meade – none of whom had any knowledge of her request for FMLA leave – each testified that he or she made an independent evaluation of the records and agreed that Plaintiff's conduct warranted her termination.

There is no case law to support a "cat's paw" theory[5] on this type of situation involving an FMLA claim in the Eighth Circuit. *See Stacks v. Southwestern Bell Yellow Pages, Inc.,* 27 F.3d 1316 (8th Cir. 1994), *Lacks v. Ferguson Reorganized School District R-2,* 147 F.3d 71 (8th Cir. 1998), and *Kramer v. Logan County School District No. R-1,* 157 F.3d 620 (8th Cir. 1998). Even if there was, the independent review conducted by the other decision-makers weighs against the application of that theory of liability and the conclusion that the termination decision was made with a conscious disregard for the FMLA. *See Hyde v. K.B. Home, Inc.* 355 Fed. Appx. 266, 273-274 (11th Cir. 2009) ("where a decision maker conducts his own evaluation and makes an independent decision, his decision is free of the taint of a biased [person]").[6]

---

[5] The "cat's paw" theory provides that "an employer cannot shield itself from liability for unlawful termination by using a purportedly independent person or committee as the decision maker where the decision maker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her unlawful design." *Quamhiya v. Iowa State University of Science and Technology,* 566 F.3d 733, 742 (8th Cir. 2009), *quoting Richardson v. Sugg,* 448 F.3d 1046, 1060 (8th Cir. 2006).

[6] Defendant is aware that the Supreme Court's recent decision in *Staub v. Proctor Hospital,* 562 U.S. ___ (2011), where the Court held that "if a supervisor performs an act motivated by anti-military animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA," may have redefined to what extent the independent review conducted by the decision-makers can absolve the employer of liability. However, *Staub* is legally inapplicable to and factually distinguishable from this case. Even if *Staub* were applicable, a "biased recommendation" by a supervisor like Sandy Cook cannot be a causal link if the "independent investigation takes into account [] that the adverse action was, apart from the supervisor's recommendation, entirely justified." (*Id.* at *9). The evidence in this case is clear that shift paperwork completed by Plaintiff indicated falsifications and other violations of standard operating procedures that were identified by Sandy Cook and Julia Evans. While Plaintiff argued that her conduct did not warrant her termination, she did not even argue that she never engaged in that conduct. To the extent that Plaintiff's conduct, as evidenced the shift paperwork, alone served as the basis for her termination, there was no "biased recommendation" that could serve as a causal link. Plaintiff's termination was "entirely justified" even without Sandy Cook's input.

7

Plaintiff's additional theory that the "print dates" on the emails attached to Plaintiff's termination letter show that Sandy Cook "gathered up paperwork" at the last minute in an attempt to support the termination is also not evidence of causation.  First, this theory is nonsensical.  When the termination letter is read in conjunction with the referenced emails, it is clear that Saint-Gobain provided copies of those emails and references to them only to support its statement to Plaintiff that she had been reminded, over and over again, to follow procedures.  Those emails were simply examples of those reminders that had not previously been printed or were not readily available.  Plaintiff did not dispute – nor could she – that the emails were actually written <u>before</u> she allegedly requested FMLA leave; nor did Plaintiff dispute that the content of those emails was an accurate reflection of the author's message.  The print date on the emails also does not abrogate the undisputed/unrefuted fact that the decision-makers (or, at a minimum, a majority of the decision-makers) based their termination decision upon several violations of standard operating procedures that were supported by written documentation and occurred within close proximity to the date of the termination.  The sole evidence presented at trial leads to one conclusion – it was the occurrence of those violations, not the alleged FMLA request, that lead Sandy Cook to gather those emails in support of the termination.  Plaintiff's theory on this point is not "beyond speculation" – in fact, it is nothing but speculation – and it does not help sustain her burden of proving causation.

### iii. Timing alone is rarely sufficient.

Plaintiff suggests that causation can be shown by timing – because she was terminated just two days after making her alleged request.  It is well established that timing alone is rarely sufficient to demonstrate causation.  *Haas v. Kelly Services, Inc.,* 409 F.3d 1030, 1037 (8th Cir. 2005); *Smith v. Allen Health Sys.,* 302 F.3d 827 , 832-833 (8th Cir. 2002); *Kipp v. Missouri*

8

*Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) ("[A] 'mere coincidence of timing' can rarely be sufficient to establish a submissible case of retaliatory discharge"); *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000) (same); *Bradley v. Widnall*, 232 F.3d 626, 633 (8th Cir. 2000) (a plaintiff "must do more than point to the temporal connection between the filing of her first complaint and the [employer's] allegedly adverse actions."). Plaintiff has put forth no evidence to indicate that the proximity between Plaintiff's alleged request and her termination is anything but a "mere coincidence of timing."

**II.     Mistreatment of the element of liquidated damages under the FMLA specifically warrants a written opinion for clarification.**

In the event that the Court deems it appropriate to deny this Renewed Motion, Saint-Gobain respectfully requests a written opinion on all related issues that clarifies the basis for the Court's rulings. Such a written opinion is specifically warranted in regards to the liquidated damages issue, which is explored in detail below.

**a.   Misunderstanding of liquidated damages provision.**

Under 29 U.S.C. § 2617, the Court, not the jury, is entitled to disallow liquidated damages upon a finding that Saint-Gobain met its burden of demonstrating that it acted in good faith when it terminated Plaintiff. While both Saint-Gobain [Document No. 94] and Plaintiff [Document No. 97] proposed jury instructions that contemplated a good faith instruction, neither party included in their proposed verdict forms the element of good faith. The Court, upon its own understanding of the law, inserted into the verdict form a question regarding good faith. The Court, also upon its own understanding, deleted from Saint-Gobain's proposed instruction the question regarding the "but for" cause element of Plaintiff's claim. [Document No. 116].

The Court may use its discretion to reduce the amount of liability by disallowing liquidated damages despite a jury finding that the FMLA has been violated. 29 U.S.C. § 2617.

9

The jury is charged with determining whether a violation occurred, while it is within the Court's province to determine whether good faith should bar the liquidated damages claim. Thus, the jury's opinion regarding good faith in this case, as asked for in the verdict form, was irrelevant and may have contributed to an excessive judgment. To the extent that the Court considered the jury's opinion, as indicated on the verdict form [Document No. 119], when deciding not to abrogate a liquidated damages award, the Court's consideration was in error.

### b. Written opinion warranted.

In this case, the misunderstanding regarding liquidated damages caused or could have caused confusion to the jury tainting the FMLA verdict and the addition of liquidated damages. The jury should not have been charged with a decision regarding good faith because, under the law, only the Court is responsible for making such a finding. The jury's contemplation of Saint-Gobain's good faith could have and likely prejudiced Saint-Gobain on the FMLA retaliation claim.

Additionally, given the misunderstanding regarding liquidated damages, it is impossible to know whether the Court's final judgment on liquidated damages was a result of the jury's finding that Saint-Gobain did not act in good faith or a result of its own, independent analysis of the issue as called for at law. The Court's ruling on this point should not have been based in any way upon the jury's finding. The record reveals misunderstandings and questions regarding the basis for the final judgment and Saint-Gobain requests that the Court provide a written opinion regarding its decision not to abrogate liquidated damages.

### III. Evidence that Saint-Gobain did act in good faith calls into question the appropriateness of the liquidated damages award.

In *Hite v. Vermeer Mfg. Co.*, the Eighth Circuit stated:

> To avoid a liquidated damages award, the defendant bears the burden of establishing that it acted with subjective good faith and that it had an objectively reasonable belief that its conduct did not violate the law. The good faith requirement demands that the defendant establish that it honestly intended to ascertain the dictates of the FMLA and to act in conformance with it.

446 F.3d 858, 868 (8th Cir. 2006)(internal citations omitted).  Given the nature of Plaintiff's claim and the basic facts surrounding the claim, Saint-Gobain did not have the opportunity to identify "traditional" evidence of good faith that would conform to the standard annunciated in *Hite*.  The primary disputed issue on Plaintiff's FMLA retaliation claim was whether Plaintiff notified Sandy Cook of her intention to take leave.  To the extent that this is a unique claim that did not result in a formal denial of FMLA leave or a termination of Plaintiff while she was on leave, the number of cases directly on point are limited.

Still, the sole evidence weighs in favor of a finding that Saint-Gobain did act in good faith.  Plaintiff testified that, in 2007, she was reinstated after turning in the appropriate paperwork for FMLA leave.  The only reasonable inference to be drawn from this evidence is that Saint-Gobain did this *because* it was concerned about the implications of not following the letter of the law.

In addition, Lisa Steiner testified that she has granted numerous FMLA leave requests in the past and that she herself has taken FMLA leave with no problems.  These facts are further evidence of Saint-Gobain's good faith efforts to comply with the FMLA.  *See Bowyer v. Dish Network,* 2010 U.S. Dist LEXIS 14680, *19-20 (W.D. Pa. 2010).  Plaintiff also put on evidence of Saint-Gobain's ethics policies and its EEO policy.  This evidence weighs against the conclusion that Saint-Gobain had no regard for the law when it terminated Plaintiff.  *Id.* Also, Plaintiff made three requests for a service letter from Saint-Gobain by sending the same letter to three individuals at the company.  In response, and as it was required to do under the law, Saint-

Gobain provided her with the letter she requested, again indicating that Saint-Gobain takes its obligations under the law seriously.  Such conduct, both in general and as related to the FMLA, clearly shows that Saint-Gobain is more than concerned about the law and the rights of Plaintiff and others.  Such a showing should have been sufficient for a finding in Saint-Gobain's favor abrogating liquidated damages.

**IV.    Conclusion**

For the reasons shown above, the Court should enter a written order granting Saint Gobain's motion for judgment as a matter of law on Plaintiff's FMLA claim.  Alternatively, the Court should, at a minimum revisit the issue of liquidated damages based solely on the evidence and applying its own understanding of the law without regard to any jury determination of this issue.

Respectfully submitted,

  s/ *Jeffery M. Mallamad*
Jeffery M. Mallamad
Carolyn Clay Hall
Katherine Gehring Erdel
Bingham McHale LLP
10 West Market Street, Suite 2700
Indianapolis, IN 46204
Phone: 317-635-8900
Fax:  317-236-9907

*Lead Counsel for Defendant, Saint-Gobain Containers, Inc.*

Dennis C. Donnelly
BRYAN CAVE LLP
211 North Broadway, Suite 3600
One Metropolitan Square
St. Louis, MO 63102

*Local Counsel for Defendant, Saint-Gobain Containers, Inc.*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2011, a copy of the foregoing was filed electronically foregoing was filed electronically.  A copy of this filing is available via the Court's electronic filing system to the following counsel of record:

Kristin Whittle Parke
11901 Olive Blvd., Suite 200
First Bank Building
St. Louis, MO 63141

                s/ *Jeffery M. Mallamad*