# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2354
_____

| | |
|---|---|
| Kathleen Marez, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Saint-Gobain Containers, Inc., | * |
| | * |
| Appellant. | * |

_____

No. 11-2356   Appeals from the United States
_____   District Court for the
              Eastern District of Missouri.

| | |
|---|---|
| Kathleen Marez, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Saint-Gobain Containers, Inc., | * |
| | * |
| Appellee. | * |

_____

Submitted: April 18, 2012
Filed: July 31, 2012
_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Kathleen Marez sued her former employer, Saint-Gobain Containers, Inc. (Saint-Gobain), for unlawful termination. She claimed that Saint-Gobain retaliated against her, in violation of the Family Medical Leave Act (FMLA), and that Saint-Gobain committed gender discrimination, in violation of the Missouri Human Rights Act (MHRA). A jury returned a verdict in Marez's favor on the FMLA claim and in Saint-Gobain's favor on the gender discrimination claim. The district court[1] awarded Marez liquidated damages and part of her requested attorneys' fees. Saint-Gobain appeals from the denial of its motion for judgment as a matter of law on the FMLA claim and from the award of liquidated damages. Marez cross appeals, arguing that her claim for attorneys' fees should not have been reduced. We affirm.

I.

We state the facts in the light most favorable to Marez. See Howard v. Mo. Bone and Joint Ctr., Inc., 615 F.3d 991, 994 (8th Cir. 2010).

Saint-Gobain produces glass beer bottles at its plant in Pevely, Missouri. In June 2006, Saint-Gobain hired Marez as a production supervisor. Although Marez had supervisory experience in manufacturing, she did not have any previous experience with glass manufacturing. As a production supervisor, Marez oversaw the plant's hourly employees. When she worked the evening or night shifts, she was in charge of the entire plant.

In her June 2007 annual performance appraisal Marez was rated as "fair." Given the form's rating options, the "fair" rating was the equivalent of a two on a

---

[1]The Honorable Mary Ann L. Medler, United States Magistrate Judge for the Eastern District of Missouri, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c).

-2-

scale of one to five, with five being the highest possible rating. The review also noted as one of Marez's strengths that "[s]he fills out necessary reports completely." Saint-Gobain claims that Marez was frequently counseled on performance issues, but Marez contends that, unlike some of her colleagues, she had not been written up for performance issues. Marez was, however, written up for insubordination in May of 2007.

In early July 2007, Marez took medical leave under the FMLA. After being told by her doctor that he was placing her on medical leave, Marez called Lisa Steiner, Saint-Gobain's human resources manager, to notify her. Steiner instructed Marez to call her supervisor, Sandy Cook. Steiner acknowledged that Cook would be irritated. According to Marez, Cook was not happy when she received the news that Marez would be unavailable over the Fourth of July holiday weekend. Marez's initial paperwork requested leave until August 27, 2007. Marez did not return to Saint-Gobain on August 27, and Saint-Gobain terminated her employment on September 10. After Marez provided updated paperwork for her medical leave, she was reinstated and returned to work on September 13.

On January 28, 2008, Marez notified Cook that she would require FMLA leave for her husband's upcoming surgery. Although Marez did not know the date of the surgery and thus did not know when she would require leave, she informed Cook that it would be "soon." Marez did not notify any other members of Saint-Gobain management, and Cook did not tell anyone that Marez required FMLA leave.

Marez was not scheduled to work on January 29 or 30. On January 30, Steiner called Marez and asked her to come into the plant, where she met with Steiner, Cook, and Scott Meade, the operations manager. Marez was then terminated, her termination letter stating that she had failed to follow Saint-Gobain procedures, including: (1) she marked on a check sheet that a piece of equipment was properly functioning throughout her shift on January 28, when in fact that piece of equipment

-3-

was "flatlining," or not reporting data; (2) she sent a Reselect employee to the Lehr area, an inspection area, to discard defective bottles by hand rather than leaving the task to the machine; and (3) she hand pressure-tested bottles. Marez later filed suit against Saint-Gobain, alleging the claims set forth above, among others.[2]

The evidence presented at trial revealed that four members of Saint-Gobain management were involved in the decision to terminate Marez. Cook discovered that the equipment was flatlining and that Marez failed to report it. Cook then assembled the paperwork regarding Marez's failure to report the flatlining and follow other procedures and brought the paperwork to Meade. After some discussion, Cook and Meade brought the issue to the attention of Steiner and Charlie Franzoi, the plant manager. Together they decided to terminate Marez's employment.

According to their testimony, Marez's supervisors believed that Marez had completed her paperwork without actually checking the equipment and they represented that falsifying paperwork was the primary reason for Marez's termination. According to Marez, she failed to notice that the machine flatlined and she did not falsify her paperwork.

Marez presented evidence showing that although the other production supervisors had committed the same alleged infractions outlined in her termination

---

[2] Marez sued on five grounds. She claimed that (1) Saint-Gobain had retaliated against her in violation of the MHRA, that (2 & 3) Saint-Gobain had discriminated against her on the basis of gender and age, and that (4 & 5) Saint-Gobain had retaliated against her for taking FMLA leave in 2007 and for her request for future leave in 2008. Marez's claim of retaliatory discharge under the MHRA was dismissed because her Equal Employment Opportunity Commission charge was filed more than 180 days after the alleged retaliatory conduct. See Mo. Rev. Stat. § 213.075. The district court granted summary judgment in favor of Saint-Gobain on the age discrimination claim and 2007 FMLA retaliation claim.

letter, they were not terminated. She testified that when two other production supervisors failed to note flatlining machinery, Cook told them, "Your equipment flatlined, you guys didn't note it, keep an eye on your equipment." These two production supervisors were not terminated or formally disciplined. Moreover, Marez presented evidence that seven months prior to her termination another supervisor had committed the same infraction—failing to note flatlining equipment over the course of an entire shift—and he was not terminated. Marez also introduced portions of the depositions of other production supervisors at trial, including testimony that two production supervisors had failed to check various boxes in their paperwork. The other supervisors testified that they were not intentionally falsifying paperwork, that they were busy or forgot to check the boxes, and that they were not formally disciplined for their omissions.

With respect to the remaining reasons—discarding defective bottles by hand and hand pressure-testing bottles—Marez presented evidence that other production supervisors had committed these same infractions. She testified that Cook had authorized the production supervisors to pressure test bottles by hand when they were near the threshold for meeting specifications and then sign off if the bottles passed. Marez also introduced an email from Cook reminding production supervisors to sign off and record information about bottles they approved after hand pressure testing. Marez also testified that she received less training than the other supervisors and that Cook was friendlier with other supervisors, although Cook denied it. Neither party presented evidence whether any other production supervisor had ever requested or taken leave under the FMLA.

Having prevailed on her FMLA retaliation claim, Marez was awarded $206,500 in damages and an additional $206,500 in liquidated damages. Following trial, the district court denied Saint-Gobain's renewed motion for judgment as a matter of law on the FMLA retaliation claim.

II.

A. Judgment as a Matter of Law

We review *de novo* a denial of a motion for judgment as a matter of law. Weitz Co. LLC v. MacKenzie House, LLC, 665 F.3d 970, 974 (8th Cir. 2012) (citing Chalfant v. Titan Distrib., Inc., 475 F.3d 982, 988 (8th Cir. 2007)). "We must affirm the jury's verdict 'unless, viewing the evidence in the light most favorable to the prevailing party, we conclude that a reasonable jury could not have found for that party.'" Hite v. Vermeer Mfg. Co., 446 F.3d 858, 865 (8th Cir. 2006) (quoting EEOC v. Kohler Co., 335 F.3d 766, 772 (8th Cir. 2003)). "In deciding whether to grant judgment as a matter of law, we may not weigh the credibility of evidence, and conflicts in the evidence must be resolved in favor of the verdict." S. Wine and Spirits of Nev. v. Mountain Valley Spring Co., LLC, 646 F.3d 526, 533 (8th Cir. 2011) (citing Schooley v. Orkin Extermination Co., 502 F.3d 759, 764 (8th Cir. 2007)).

"The FMLA provides eligible employees up to 12 workweeks of unpaid leave during any 12-month period." Darby v. Bratch, 287 F.3d 673, 679 (8th Cir. 2002) (citing 29 U.S.C. § 2612). It is "unlawful for any employer to discharge or in any other manner discriminate against" an employee for taking leave under the FMLA. 29 U.S.C. § 2615(a)(2). "This prohibition necessarily includes consideration of an employee's use of FMLA leave as a negative factor in an employment action," including termination. Darby, 287 F.3d at 679.

Saint-Gobain argues that there is insufficient evidence to support the jury's verdict in Marez's favor. To demonstrate retaliation, Marez was required to show that she had notified Saint-Gobain of her intention to take FMLA leave, that she was

-6-

terminated, and that there was a causal connection between the two.[3] See Darby, 287 F.3d at 679. "An employee can establish a causal link between her protected activity and the adverse employment action through 'the timing of the two events.'" Hite, 446 F.3d at 866 (quoting Eliserio v. United Steelworkers of Am., 398 F.3d 1071, 1079 (8th Cir. 2005)). Temporal evidence should generally be corroborated by other evidence of employment discrimination. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc). In presenting her case, Marez relied on the timing of her termination and the inconsistent enforcement of Saint-Gobain policies.

Although we have recognized that "it is difficult to find a principle neatly explaining why each of our cases held temporal connection was or was not sufficient to satisfy the causation requirement, it appears that the length of time between protected activity and adverse action is important." Smith v. Allen Health Sys., Inc., 302 F.3d 827, 833 (8th Cir. 2002). "Cases in which we have determined that temporal proximity alone was sufficient to create an inference of the causal link have uniformly held that the temporal proximity must be very close." Hite, 446 F.3d at 866 (internal quotation omitted); see also Smith, 302 F.3d at 832-33 (discussing our cases in which temporal proximity has or has not been considered sufficient).

Here, where the termination occurred less than forty-eight hours after notice of the protected activity was given, the timing of the two events could support the jury's finding of discrimination. In considering whether temporal proximity alone

---

[3]Contrary to Saint-Gobain's assertion, we do not require plaintiffs in employment discrimination cases to prove that their protected activity was the "but for" cause of termination, and none of the cases that Saint-Gobain points to support such a claim. Rather, "[t]o establish a causal link between the employee's exercise of FMLA rights and her termination, the employee must prove 'that an employer's retaliatory motive played a part in the adverse employment action.'" Hite, 446 F.3d at 865 (quoting Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002)).

-7-

can support an inference of causation, we have rarely been faced with two events so close in time. See, e.g., Sisk v. Picture People, Inc., 669 F.3d 896, 901 (8th Cir. 2012) (more than two months between events); Hite, 446 F.3d at 866 (two months between last use of FMLA leave and termination); Smith, 302 F.3d at 833 (two weeks between events); O'Bryan v. KTIV Television, 64 F.3d 1188, 1193-94 (8th Cir. 1995) (three months between events).

Marez did not rely solely on the proximity of her termination to her notification to Cook that she would require FMLA leave. She presented evidence that one other production supervisor had committed the same error that she had, and other production supervisors had committed similar infractions, without being terminated or suffering other significant adverse consequences. See Smith, 302 F.3d at 835 (citing Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994)) ("An employee can prove pretext by showing the employer meted out more lenient treatment to similarly situated employees who were not in the protected class, or as here, did not engage in protected activity."). She also presented evidence that Saint-Gobain was not consistent in enforcing its policies, including those that it listed in her termination letter. See Hite, 446 F.3d at 867 ("the employee can prove pretext by showing that the employer varied from its normal policy or practice to address the employee's situation") (citing Erickson v. Farmland Indus., Inc., 271 F.3d 718, 727 (8th Cir. 2001)).

Marez presented evidence that Cook normally did not discipline production supervisors for the infractions that Marez's termination letter gave as reasons for her termination, and Marez claimed that Cook was looking for errors because Marez had told her that she would need FMLA leave. Saint-Gobain countered that Marez was fired for the reasons stated in her termination letter and performance issues, rather than for giving notice of needing FMLA leave. The jury was entitled to make a credibility determination, and it chose to believe Marez. See Hite, 446 F.3d at 868. Given that less than forty-eight hours elapsed between Marez's conversation with

Cook and her termination, and that Marez presented evidence that Saint-Gobain did not normally terminate production supervisors for the offenses listed in Marez's termination letter, we conclude that a reasonable jury could have found for Marez on her FMLA retaliation claim.

B.  Liquidated Damages

We review a district court's award of liquidated damages for abuse of discretion.  Hite, 446 F.3d at 868 (citing Thorson v. Gemini, Inc., 205 F.3d 370, 383 (8th Cir. 2000)).  "Under the FMLA, the defendant employer 'shall be liable to any eligible employee affected [by a violation of the Act] . . . [for] an additional amount as liquidated damages equal to the sum of the amount' of other damages and interest awarded pursuant to § 2617(a)(1)(A)(I) and (ii) of the Act."  Thorson, 205 F.3d at 383 (quoting 29 U.S.C. § 2617(a)(1)(A)(iii)) (alterations in original).  If the employer can prove that the FMLA violation was in good faith, that is, that the employer reasonably believed its action was not in violation of the FMLA, then the court may decline to award liquidated damages.  Id.  "However, even if the employer did act in good faith, 'the decision to award liquidated damages is still within the discretion of the trial court.'"  Hite, 446 F.3d at 868 (quoting Nero v. Indus. Molding Corp., 167 F.3d 921, 928 (5th Cir. 1999)).

Saint-Gobain's liability in this case is premised on a cat's-paw theory of liability, which, in the employment discrimination context, means that "if a non-decisionmaker performs an act motivated by a discriminatory bias that is intended to cause, and that does proximately cause, an adverse employment action, then the employer has cat's-paw liability."  Torgerson v. City of Rochester, 643 F.3d 1031, 1045 (8th Cir. 2011) (en banc) (citing Staub v. Proctor Hosp., 131 S. Ct. 1186, 1194 (2011)); see also Qamhiyah v. Ohio State Univ. of Sci. & Tech., 566 F.3d 733, 742 (8th Cir. 2009).  Thus, although Steiner, Meade, and Franzoi were unaware of

Marez's request for FMLA leave, Saint-Gobain can be held liable based on Cook's animus that resulted in Marez's termination.

We conclude that liquidated damages may be awarded in eligible FMLA cases premised on cat's-paw liability, adopting the following reasoning:

> Were we to accept the proposition that the cat's-paw theory applies to determining liability and lost wages, but not to liquidated damages, that would have the result of treating less favorably for purposes of damages calculations plaintiffs who utilize the cat's paw theory than those who do not. We see no basis in the statute for such a result.

Rasic v. City of Northlake, No. 08 C 104, 2010 WL 3365918 at *14 (N.D. Ill. 2010).

The district court thus did not abuse its discretion in awarding liquidated damages. Saint-Gobain is liable for employment discrimination under the cat's-paw theory of liability. See Guimaraes v. SuperValu, Inc., 674 F.3d 962, 972 (8th Cir. 2012) (citing Staub, 131 S. Ct. at 1194). Because we impute Cook's bad faith to Saint-Gobain for purposes of liability, we see no reason to decline to impute her bad faith to Saint-Gobain for purposes of awarding liquidated damages. Furthermore, even if the employer had acted in good faith, the district court acted within its discretion in imposing liquidated damages here.

C. Attorneys' Fees

"We review a district court's award of attorneys' fees under the abuse of discretion standard." Thorne v. Welk Inv., Inc., 197 F.3d 1205, 1213 (8th Cir. 1999) (citing St. Louis Fire Fighters Ass'n v. St. Louis, Mo., 96 F.3d 323, 331 (8th Cir. 1996)). The FMLA provides for reasonable attorneys' fees to be awarded to a prevailing plaintiff. 29 U.S.C. § 2617(a)(3).

-10-

Attorneys' fees are awarded in accordance with the method outlined in Hensley v. Eckerhart, 461 U.S. 424 (1983). Under Hensley, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar amount. 461 U.S. at 433. At that point, other factors "may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" Id. at 434. "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." Id. A plaintiff can be compensated for work on unsuccessful claims if they are sufficiently related to the successful claim because "they 'involve a common core of facts' or 'are based on related legal theories.'" Emery v. Hunt, 272 F.3d 1042, 1046 (8th Cir. 2001) (quoting Hensley, 461 U.S. at 435).

Marez argued to the district court that she should be awarded attorneys' fees for work performed on all five of her claims because the claims are inextricably related. Saint-Gobain countered that Marez was entitled to fees only for work performed on her 2008 FMLA retaliation claim, the single claim on which she prevailed. Saint-Gobain argued that Marez's fees should be reduced by seventy percent from the amount requested.

Marez relies on Thomlinson v. City of Omaha, 63 F.3d 786 (8th Cir. 1995), to argue that full attorney's fees can be appropriate, even when a plaintiff does not prevail on each statutory claim. Thomlinson, however, dealt with a situation in which the district judge entered judgment as a matter of law for the defendant on two claims after a jury had found for Thomlinson. Id. at 787. The court then reduced Thomlinson's attorneys' fees to account for her limited success. Id. at 791. Because Thomlinson's damages were not reduced and her claims were strongly related, we reversed. In this case, however, several of Marez's claims were never presented to a jury, and the jury found in her favor on only one of two claims submitted to it.

Further, Marez was not awarded the punitive or emotional distress damages she sought.  Marez's success thus was more limited than Thomlinson's.

The district court began with the lodestar amount calculated by Marez's attorney, which included hours work on all five of Marez's claims, and then found that a percentage reduction to account for Marez's limited success was appropriate.  D. Ct. Order of May 18, 2011, at 25-26.  In making this determination, the district court considered the relationship between Marez's successful and unsuccessful claims, as well as other appropriate factors.[4]  "There is no precise rule or formula for making fee determinations in cases with only partial success" and a district court "may simply reduce the award to account for the [plaintiff's] limited success."  Warnock v. Archer, 397 F.3d 1024, 1026 (8th Cir. 2005) (alterations in original) (citation omitted).  Although there is no one methodology for calculating an award of fees, it is important "for the district court to provide a concise but clear explanation of its reasons for the fee award."  Hensley, 461 U.S. at 437.  In this case the district court did just that.  It set forth relevant case law, considered the arguments of both parties and the appropriate factors, and concluded that a seventy percent reduction was excessive, but that a fifty percent reduction from the requested fees was appropriate.  We conclude that the district court did not abuse its discretion in so ruling.

III.

The judgment is affirmed.

_____

---

[4]The district court canvassed each of the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) (limited by Blanchard v. Bergeron, 489 U.S. 87 (1989)), and adopted by us in Winter v. Cerro Gordo County Conservation Board, 925 F.2d 1069, 1074 n.8 (8th Cir. 1991).

-12-